IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**LOUISE ROUNDS** **PLAINTIFF**

**v.** **No. 5:12-cv-276-DPM**

**SOUTHERN HERITAGE HEALTH AND REHABILITATION, LLC** **DEFENDANT**

# ORDER

**1. Background.** Louise Rounds worked as a certified nursing assistant for Southern Heritage, a rehabilitation hospital, for several years. In October 2011, a co-worker made a cell-phone video of Rounds sitting in a patient's room under a blanket with her legs elevated. The director of nursing, Tremica Lane, concluded that Rounds was sleeping on the job. Lane decided Rounds should be fired. The facility administrator, Debbie Thornton, approved that decision and Lane ended Rounds's employment. Rounds and Lane are African-American; Thornton is Caucasian. Rounds was fifty-four at the time. She says her disability—degenerative knee disease—required her to take breaks with her legs up; Southern Heritage knew about and accommodated this need; she was monitoring a patient; and she wasn't sleeping. She alleges that Southern Heritage fired her because of her race, her age, and her

disability. Rounds also alleges that Southern Heritage violated the Family Medical Leave Act by denying her leave to take care of her mother and for knee surgery. Finally, Rounds alleges that Southern Heritage retaliated against her for making many FMLA/vacation time requests, complaining about health insurance that lapsed during leave, making an EEOC claim, and filing a grievance with the local United Food and Commercial Workers Union. Southern Heritage moves for summary judgment on all claims. The Court will develop the material facts—taking them in Rounds's favor where disputed—on each group of claims. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

**2. Race Claims.** Rounds alleges racial discrimination under Title VII, the Arkansas Civil Rights Act, and 42 U.S.C. § 1981.

Rounds filed two EEOC charges. Neither alleged race discrimination. *№ 45-4*. Rounds's Title VII race claim therefore fails because she didn't exhaust her administrative remedies.

Rounds had one year to make an employment-discrimination claim under the Arkansas Civil Rights Act. Ark. Code Ann. § 16-123-107(c)(3). She was fired in October 2011. She didn't allege race discrimination until more

than two years later, when she moved to amend her complaint. *№ 18.* Her ACRA race claim is time barred.

The Court assumes Rounds has made a *prima facie* case on her § 1981 claim. *Harris v. Hays*, 452 F.3d 714, 717–18 (8th Cir. 2006). Southern Heritage has provided a legitimate non-discriminatory reason for firing Rounds—sleeping on the job. The question is whether a jury could reasonably conclude that the hospital's reason was a pretext for race discrimination. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083–87 (8th Cir. 2013).

Southern Heritage's handbook lists sleeping on the job as a category I policy violation, which subjects an employee to immediate termination. *№ 45-3 at 1.* According to one employee, lots of folks slept on the job, but, around the time Rounds was fired, the hospital started cracking down. *№ 55-14 at 15–16, 47–48.* Rounds participated in an inservice training less than two weeks before her firing that hit this point: "If you are found sleeping on the job, this is termination—no warnings will be given." *№ 59-1.* LPN Lila Williams used her cell phone to record Rounds in a blind patient's room, sitting with her legs up and covered with a blanket. Though this fact is disputed, the Court assumes the light was on when Williams first entered the

room, because that was Rounds's testimony. *№ 55-1 (Part I) at 70.* Williams turned the light out, which prompted Rounds to say "Lila, cut the light back on." *Ibid.* Williams returned with a co-worker and a cell phone, and shot the video. Williams called Thornton that night and sent her the video. *№ 55-4 at 35.* Thornton told Williams to call the Union representative, send Rounds home, and have Rounds meet with Lane the next day. *№ 55-4 at 32–33.* Lane watched the video. After an investigation, Lane decided to fire Rounds; and Thornton, the facility administrator, gave her a green light. *№ 55-4 at 34.*

In response to the hospital's business reason, Rounds points to two Caucasian employees who slept on the job but weren't fired. These individuals must be similarly situated in all relevant respects to be valid comparators. *Ridout*, 716 F.3d at 1085. One co-worker, Chris, had different supervisors. *№ 55-14 at 59.* So he drops out. The other co-worker, LPN Williams—the one who reported Rounds—is a closer question.

Williams helped present the October inservice, which warned that sleeping at work would result in termination. *№ 59-1.* There's a photograph of Williams sleeping on the job. It was posted for a while at a nurse's station where Lane or Thornton could have seen it. It's unclear when the photo was

taken; it's also unclear whether Williams was on or off the clock. *№ 55-16 at 30–31.* While they were working together, Williams told Rounds (and other CNAs) that she (Williams) would be down the hall sleeping if they needed her and that management knew about and approved her sleeping. *№ 55-1 (Part II) at 41.* In her exit interview, Rounds asked Lane why Williams wasn't going to be fired too — Rounds says it was common knowledge that Williams slept on the job. *№ 55-1 (Part II) at 41–44.* Lane told Rounds to mind her own business. Lane had disciplined Williams for non-category I offenses, but it was another supervisor who didn't fire Williams for a category I offense involving patient medication. *№ 55-19, 55-20, 55-21, 55-22, 55-22A, & 55-23.* Williams is an LPN, while Rounds is a CNA. But they both worked for Lane, and ultimately Thornton. And both were formally subject to the no-sleeping rule. Giving Rounds the benefit of the disputed facts and reasonable inferences in this murky record, the Court concludes that Williams is a valid comparator.

Rounds, however, has failed to create a jury question on pretext. Southern Heritage had a video of what appeared to be a serious rule violation. Section 1981 doesn't require employers to make correct decisions, wise

decisions, or fair decisions. *Hill v. St. Louis University*, 123 F.3d 1114, 1120 (8th Cir. 1997). It forbids contract-related decisions based on race. During the EEOC process, Rounds said that race wasn't a factor in Southern Heritage's decision. *№ 55-1 (Part II) at 52*. Lane, the primary decision maker, is African-American too. When asked on deposition about racial discrimination by Lane, Rounds replied "I can't say one way or the other." *№ 55-1 (Part II) at 32*. This remark was candid and accurate — the Court doesn't see any evidence that Lane harbored racial animus in general or against Rounds in particular. Rounds "believe[s]" that Thornton's approval of her firing was race based — because Rounds believes Thornton saw the pictures, knew Williams was sleeping on the job too, but didn't fire her. *№ 55-1 (Part II) at 32–33*. A person's belief about what happened, though, doesn't create a jury question unless it rests on evidence or reasonable inferences from evidence. *Davis v. Jefferson Hospital Association*, 685 F.3d 675, 681–684 (8th Cir. 2012).

Rounds gave specifics about LPN Williams's picking at her, and other African-American CNAs, and testified that Williams's actions were motivated partly by workplace disputes and partly by race. *E.g., № 55-1 (Part I) at 39–40, 42–48, 55, 79–80 & № 55-1 (Part II) at 30*. But Rounds doesn't argue that

Williams, prompted by racial bias, duped an innocent Lane and Thornton into the firing; Rounds argues instead that Lane and Thornton acted with actual racially discriminatory intent. So a cats-paw theory isn't in play. *Compare Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1151–52 (8th Cir. 2011).

Taking as truth that Williams slept on the job and got a pass, there is simply insufficient evidence that race motivated Southern Heritage treating Rounds differently. Rounds's racial discrimination claim therefore fails as a matter of law for want of sufficient causation evidence.

**3. Age Claims.** Under the ADEA, Rounds "must show that age discrimination was a 'but for' cause of [her] termination." *Ridout*, 716 F.3d at 1083 (quotation omitted). She was fifty-four. She says LPN Williams picked at her and gave her an increased workload—additional patients—three or four times in one year. *№ 55-1 (Part I) at 59*. A co-worker corroborated this. *№ 55-17 at 1*. Stracy Jackson, a younger CNA, was called in temporarily to replace Rounds. *№ 55-16 at 17*. Finally, Rounds relies on an incendiary remark supposedly made by Lane on the night of the firing: "[Rounds] needs to have her old self at home because she was of no use to the nursing home because of her knees." *№ 55-17 at 1*.

There's no jury issue on age discrimination. First, the old-self remark is inadmissible. Lane's words, as Rounds argues, would be an admissible party statement. FED. R. EVID. 801(d)(2). But the person who supposedly heard those words, and supposedly repeated them to another co-worker, testified on deposition that Lane didn't say anything about Rounds needing to be at home. *№ 55-14 at 42.* Rounds can't overcome the second-layer hearsay problem: her co-worker Davis can't testify to what her co-worker McNealey supposedly said Lane said. *№ 55-17 at 1.* Second, while being replaced by a younger worker weighs in the balance for age discrimination, it's not dispositive. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). Third, in her deposition, Rounds said that the workload increase resulted from workplace friction between her and Williams, motivated partly by Williams's racial bias—not by age bias. *№ 55-1 (Part I) at 42–48, 55–59; № 55-27.* Even with the benefit of all reasonable inferences, without the incendiary statement by Lane, Rounds has failed to offer sufficient evidence that age was the determining factor in her firing. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009). This record is just too thin to support a verdict on age discrimination. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605,

613 (8th Cir. 2014) (*en banc*).

**4. Disability Claims.** It's common ground that Rounds's disability-discrimination claims under the Americans with Disabilities Act and the Arkansas Civil Rights Act are analyzed the same way, using the familiar burden shifting/pretext rubric. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002). Rounds's ACRA claim for disability discrimination is timely and exhausted because, unlike her race claim, she charged disability discrimination at the EEOC and asserted the claim here within the limitations period. The fighting issue is pretext—more specifically whether Rounds has offered sufficient evidence that her disability motivated Southern Heritage to fire her. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002–04 (8th Cir. 2012). Southern Heritage puts the point in two words: no causation.

Here's the relevant record at this point. Rounds was a qualified individual with a disability. Southern Heritage accommodated her disability. She was allowed to take breaks and elevate her legs. *№ 55 at 4*. Her firing occurred in the context of the accommodation. During her exit interview, Rounds explained what happened to Lane: she was in a chair in a blind patient's room; a co-worker had told her that the patient needed extra

attention to keep her from falling out of bed; Rounds's legs and feet were swollen from standing and walking at work; so she elevated them in the chair. *№ 55-1 (Part I) at 74.* Rounds denied being asleep. *№ 55-1 (Part I) at 70.* The room light was on when LPN Williams came in; she turned it off when she left to get her co-worker and the cell phone to shoot the video. *Ibid.* There's no evidence that Rounds told Lane about Williams turning off the light, but the Court accepts her side of things as true at this point.

But Southern Heritage fired Rounds for being asleep, not for taking the break. The video showed her in a patient's dark room in a chair under a blanket. (Neither side has put the video of record.) The hospital may have been mistaken about what actually happened. LPN Williams may have made things look bad by turning off the light before the video was made. Rounds's Union steward co-worker, for example, watched the video and concluded Rounds wasn't asleep. *№ 55-14 at 27–28.* But an employer's good faith belief that an important rule has been broken, even if mistaken, suffices. *Pulczinski*, 691 F.3d at 1003–04.

Lane's purported statements do not get this claim to the jury. Again, Lane's statement to McNealey doesn't come in; McNealey didn't confirm it,

and Davis's report of what McNealey said is inadmissible hearsay (not within any exception) offered for its truth. FED. R. EVID. 801(c). Second, Rounds's belated effort to bring in another purported Lane statement comes up short. In a post-deposition affidavit filed in response to Southern Heritage's motion for summary judgment, Rounds affirmed that "Lane stated to me that I needed to be at home if I was sick . . . ." *№ 45-7*. A reasonable juror *could* hear this as Lane expressing exasperation with accommodating Rounds's disability. (The statement likewise could be heard as a benign expression, but the Court is giving Rounds the benefit of all reasonable inferences.)

This new statement, though, is inadmissible because of its unexplained tardiness. *Marathon Ashland Petroleum, LLC v. International Brotherhood of Teamsters*, 300 F.3d 945, 951 (8th Cir. 2002). The statement was not revealed to the EEOC or in written discovery. Rounds was deposed at length on two occasions. The termination meeting was covered. *№ 55-1 at (Part I) 77–78 & № 55-1 (Part II) at 53–54, 115–119*. Rounds's affidavit about Lane's sickness statement doesn't contradict her deposition testimony, which would make the issue plainer. *E.g., American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997). And to her credit, Rounds's counsel offered to

make Rounds available for yet another deposition about the affidavit. What's missing, however, is any explanation of why the sickness statement is so late in coming out. The other person present, Union steward/co-worker McNealey, testified that Lane made no such statement. *№ 55-14 at 42.* All material things considered, the Court concludes that the purported sickness statement should not be weighed in the balance. There has to be a stopping point for the evidence or the issues for trial could never be focused by summary judgment. *American Airlines, Inc.*, 114 F.3d at 111.

Rounds's ADA claim fails for lack of evidence that her disability motivated Southern Heritage's decision. The hospital has shown that Lane believed Rounds was sleeping. A jury could reasonably conclude, considering all the circumstances, that Lane was wrong. But Rounds has not offered sufficient evidence, or created sufficient reasonable inferences, that—in truth—Rounds's disability motivated Lane's decision. "This is not a case where the record in support of the employer's conclusion is . . . so sparse, or the employer's conclusion so implausible, that . . ." a material fact issue exists about Southern Heritage's intent. *Pulczinski*, 691 F.3d at 1004; *see also E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014).

**5. FMLA Claims.** Rounds asserts four FMLA violations.

First, Rounds makes an entitlement claim: she was a qualified employee who was denied leave. *Pulczinski*, 691 F.3d at 1005. Rounds was her mother's legal guardian and primary caregiver. *№ 55 at 7 & 55-1 (Part I) at 31*. She says that, about four months before her termination, she was denied leave to take care of her mother, who was in a long-term care facility in Louisiana. *№ 55 at 7–8*. Rounds says that Lane denied the leave because Southern Heritage was short-staffed. *№ 55-1 (Part II) at 108*. Instead, Southern Heritage allowed Rounds to start her shift late—so she could care for her mother in Louisiana, until she was relieved by another family member, and then drive back to Southern Heritage's facility in McGehee, Arkansas. *№ 55 at 8*.

Rounds's entitlement claim is for the jury. Under the FMLA, employees are entitled to twelve weeks of leave during a year to, among other things, care for a parent who is seriously ill. 29 U.S.C. § 2612(a)(1)(C). Rounds's mother was seriously ill in a nursing home. Rounds requested leave in June of 2011, was denied leave, and her mother died less than two months later. Whether Rounds requested FMLA leave or vacation time makes no legal difference because it was Southern Heritage's responsibility to designate

qualifying absences as FMLA leave. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002). Southern Heritage's knowledge about the leave's covered purpose seems established, or at least a jury question is presented, because the hospital adjusted Rounds's start time in recognition of her traveling from Louisiana. *Browning v. Liberty Mutual Insurance Co.*, 178 F.3d 1043, 1049 (8th Cir.), *cert. denied*, 528 U.S. 1050 (1999). Construing the disputed facts in Rounds's favor, a reasonable jury could conclude that Southern Heritage denied her rights under the FMLA in June 2011. *Quinn v. St. Louis County*, 653 F.3d 745, 753 (8th Cir. 2011).

Second, Rounds makes a retaliation claim. She took three days' vacation time in July 2011—roughly a month after she requested leave and three months before she was fired—to take care of her mother. *№ 55 at 8.* In her absence, the open enrollment period for her health insurance occurred and she missed the deadline. This caused her to go without health insurance for about two months and incur some medical bills. *№ 55-1 (Part II) at 70, 96–97.* Rounds complained about this lapse in coverage to Thornton, the facility administrator. She had missed the deadline too. Thornton got the insurance reinstated for herself and Rounds two months later. *№ 55-1 (Part*

*II) at 70–72.* Rounds was fired about a month after her insurance was reinstated, and about three months after she complained about the lapse.

An FMLA retaliation claim arises when an employee opposes action that offends the statute and suffers because of her opposition. *Pulczinski*, 691 F.3d at 1006. Assuming that Rounds's complaint about the lapse suffices as opposition, her retaliation claim fails nonetheless as a matter of law. After Rounds complained, Thornton solved the problem—one she shared. *№ 55-1 (Part II) at 72*. Rounds seems to rely here solely on timing. But "after the fact, therefore because of the fact" is a fallacy in law as well as logic. More evidence of a causal connection must exist. There's simply no evidence, other than timing, that the insurance lapse/complaint/reinstatement had anything to do with Rounds losing her job. *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833–34 (8th Cir. 2002). The timing, moreover, is not so close that an inference of discrimination arises. *Withers v. Johnson*, 763 F.3d 998, 1005 (8th Cir. 2014).

Rounds's third FMLA claim asserts discrimination. Three days before her firing, Rounds requested two weeks' vacation during the following month. *№ 55-9*. She says this time off was for knee surgery, though it hadn't

been scheduled yet. *№ 55-1 (Part II) at 59–60*. Rounds's request gave Southern Heritage no details about why she needed leave. *Ibid; № 55-9*. She's offered no evidence that Lane or Thornton knew about her knee-surgery plan. Rounds lost her job before Southern Heritage acted on this request. This claim fails for lack of adequate notice. Unlike with the time requested off to care for her mother, Rounds didn't provide enough formal or informal notice about the "why" to trigger the FMLA. *Browning*, 178 F.3d at 1049. Southern Heritage cannot have discriminated against her for pursuing FMLA rights in the absence of evidence that the hospital knew, or should have known, that Rounds might be entitled to FMLA-protected leave.

Last, Rounds makes a global FMLA discrimination claim: Southern Heritage fired her for requesting and using leave throughout the course of her employment. *№ 26 at 4–5*. Rounds had a history of leave for her own health conditions and her mother's. Her firing was three days after her last leave request. *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012). The Court assumes that she's made the modest showing required for a *prima facie* case of FMLA discrimination. *Pulczinski*, 691 F.3d at 1007. She has failed, however, to create a jury question on pretext. Southern Heritage fired Rounds

for being asleep. As noted on the § 1981 claim, Southern Heritage had a legitimate (even if mistaken) business reason. Rounds's proof of FMLA-prompted discrimination is marginal. Her last leave request wasn't specific enough to implicate the statute. Her June 2011 request, coupled with what Southern Heritage knew about her ill mother did; but the several-month gap between that request and her firing dilutes its evidentiary weight here. *Smith*, 302 F.3d at 833–34. Giving Rounds the benefit of the entire record, a jury could not reasonably conclude that her leave history caused Southern Heritage, in whole or in part, to fire her. *Pulczinski*, 691 F.3d at 1007. Rounds's global claim of FMLA discrimination fails as a matter of law for lack of evidence.

**6. Remaining Retaliation Claim.** Rounds makes another catch-all retaliation claim. The Court's earlier analysis applies to issues that overlap with other claims, such as FMLA retaliation. There are two new points: alleged retaliation based on (1) Rounds's 2010 EEOC claim for wage and age discrimination, *№ 45-4 at 1*, and (2) her Union grievance about an increased workload, *№ 55-27*, which she filed three days before being fired. There's just no evidence that either of these filings had anything to do with her 2011 firing.

As a matter of Title VII, the EEOC claim is too stale to support a retaliation claim. *Marez*, 688 F.3d at 963. And while it's not clear exactly what law governs on the Union-grievance issue, any claim fails for lack of sufficient evidentiary support.

* * *

Southern Heritage's motion for summary judgment, *№ 45*, is granted except on one claim. Rounds's FMLA-entitlement claim about denied leave to care for her mother in June 2011 is for the jury on the record presented. Southern Heritage is entitled to judgment as a matter of law on all other claims.

So Ordered.

D.P. Marshall Jr.
United States District Judge

14 November 2014